[Cite as *Oswald v. Oswald*, 2026-Ohio-3053.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

MICHAEL S. OSWALD ET AL.,

APPELLEES

V.

DAVID F. OSWALD
INDIVIDUALLY, AND AS
TRUSTEE OF THE
AMENDED AND RESTATED
OSWALD TRUST AGREEMENT

APPELLANT

COURT OF APPEALS NO. {48}L-25-00099

TRIAL COURT NO. CI0202401897

**DECISION AND JUDGMENT**

Decided: August 7, 2026

* * * * *

John P. Miller and Graycen M. Wood, for appellees.

Gregory H. Wagoner, Nicholas T. Stack, Evan J. Bunis,
and Jordan B. Isrow, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} This is an appeal by appellant, David Oswald,[1] Individually and as Trustee

of the Amended and Restated Oswald Trust Agreement ("Amended Trust"), from the

May 12, 2025 judgment of the Lucas County Court of Common Pleas. For the reasons

that follow, we affirm the trial court's judgment.

{¶ 2} David sets forth one assignment of error with two parts:

---

[1] For ease of discussion, we will generally refer to the parties by their first names.

A. The Trial Court committed reversible error when it granted Plaintiffs Michael Oswald ("Michael"), Thomas Oswald ("Thomas"), and Susan Bartolett's ("Susan") (together "Appellees") motion to remove David . . . as Trustee of the . . . [Amended Trust] pursuant to R.C. 5807.06(C). . .

B. The Trial Court committed reversible error when it used R.C. 5807.06(C) to modify the Amended Trust and appoint a Successor Trustee. . . .

## Background

{¶ 3} This matter involves a family, a family business, other businesses, a family trust and its beneficiaries and the removal of a family member as trustee amid allegations of, inter alia, financial wrongdoing, self-dealing, lack of transparency and a conflict of interest.

{¶ 4} Roger and Joan Oswald, husband and wife, had four children: appellant, David, and appellees, Thomas, Michael and Susan. In 1962, Roger's father purchased A.H. Jamra Co. ("Jamra"), and since then Jamra has been wholly owned by the Oswald family. Jamra is a wholesaler of tobacco, candy and grocery products, which serves and delivers products to shops, supermarkets and convenience stores in Ohio, Michigan and Indiana.

{¶ 5} In 1990, all members of the Oswald family entered into the Oswald Trust Agreement ("the Original Trust"). Roger was named the trustee. The purpose of the Original Trust was to provide for Jamra's orderly operation by granting the trustee, and his successor, the power and authority to continue Jamra's operation in the event of the death, incapacity, resignation or retirement of Roger. The members of the Oswald family

2.

were the owners of 16 shares of Jamra's common stock, out of the 22 shares of outstanding common stock.

{¶ 6} According to David, between 1990 and 2003, Roger and Thomas served in the dual role as trustee of the Original Trust and president of Jamra. In 2003, David replaced Thomas as president of Jamra.

{¶ 7} In December 31, 2009, the Amended Trust was entered into by all members of the Oswald family. David was named the trustee. The purpose of the Amended Trust was to provide for Jamra's orderly operation by granting the trustee, and his successor, "the power and authority to continue the operation of [Jamra] and to provide for transfers by gift of the beneficial interest flowing from the shares contributed by . . . [the family members]." The Oswald family members were the owners of 80 shares of Jamra's common stock (previously 16 shares[2] prior to a 5 to 1 split). Roger and Joan each owned 25 percent of the shares while each of their children owned 12.5 percent.

{¶ 8} Soon thereafter, according to David, Roger and Joan reallocated their Jamra shares to David, making him the majority (51.25%) owner of Jamra.

{¶ 9} At some point, David formed Zigm, LLC ("Zigm") and other entities. Zigm, per David, was "a logistics company, to address liability concerns and union benefits issues to protect Jamra." Zigm is an acronym for the names of David's children.

---

[2] It is unclear whether 16 or 22 shares of stock were previously outstanding. This discrepancy has no impact on our decision.

3.

{¶ 10} On March 26, 2024, appellees filed a complaint against David, individually and in his capacity as trustee, alleging claims for breach of fiduciary duties, breach of trust, fraud, and conversion.

{¶ 11} On June 26, 2024, David fired Susan from her position as vice-president of Jamra.

{¶ 12} On July 11, 2024, David filed a derivative suit in Jamra's name against appellees. In August 2024, the case was dismissed after it was consolidated with appellees' case.

{¶ 13} On October 11, 2024, appellees filed a motion to remove David as the trustee and to appoint a fiduciary to oversee the Amended Trust and Jamra until the matter was ultimately resolved.  Appellees alleged, inter alia, there was an inherent conflict of interest in David's dual roles as Jamra president and trustee of the Amended Trust, there was a breakdown of communication between David and appellees, and David acted against Jamra and the beneficiaries' best interests by placing Jamra's assets into companies David owned with his sons and by using company funds for personal expenses.

{¶ 14} David filed an opposition with supporting affidavits.  David argued, inter alia, that the removal of a trustee is a drastic remedy and the party seeking removal must establish a basis for removal by clear and convincing evidence.

{¶ 15} On April 21, 22, and 28, 2025, an evidentiary hearing was held.  At the conclusion of the hearing, the trial court orally granted the motion to remove David as

4.

trustee and installed a successor trustee and special fiduciary.  The court stated, in

pertinent part:

> . . .
>
> First and foremost, you can be a good president and a bad trustee or the opposite. These are not -- in some ways they can be mutually exclusive roles in terms of running the company well but failing in your duties that Ohio law imposes upon a trustee.  There's a duty of loyalty owed to the beneficiaries of the trust.  There's a duty not to do self-dealing of the trust.
>
> . . . [I]f you're running a business in Ohio that is doing tens of millions of dollars in sales, there's an obligation that you follow the law and accept the duties of being a trustee of the trust.  There's an inherent conflict between being the trustee of the trust in this situation and being president of Jamra . . . For every dollar that the president of Jamra pays himself, that is less retained earnings.  Another way to say that is equity.  If dividends slash disbursements were allowed, that's 75 cents less per dollar of disbursements that could be made to the trustees, and there's nothing here in the record that indicates that the plaintiffs have failed to prove that the hiding of the bonus in a wholly owned separate company did not violate the duties of being a trustee.
>
> So, I find the plaintiffs have met their burden. . .  I don't think that the successor trustee needs to run the business because, as I said before, the president can be different than the trustee.  So, really I think what a successor trustee appointed by me really would do would be to serve as the oversight to make sure that at least decisions between now and the trial don't involve self-dealing and don't involve -- don't harm the beneficiaries of the trust.
>
> I would also add that for purposes of the duties of a trustee, it doesn't really matter if the beneficiaries, and I'm not saying that they are, but doesn't really matter that they're not good or not worthy or stole from the company or ran the company poorly or created a competing company. Like the duties to the beneficiary still are imposed by Ohio law despite their conduct, and so I think there's a lack of understanding on the part of David as to what his duties are to his siblings as trustee of this trust.
>
> So, I will appoint Steven Skutch to serve as . . . interim trustee for the family trust.
> . . .

{¶ 16} On May 12, 2025, the trial court issued an Interim Order Appointing Successor Trustee ("Interim Order"). David appealed.[3]

**Interim Order**

{¶ 17} The trial court's Interim Order provides in relevant part:

Based on Plaintiffs[/appellees'] . . . motion to remove . . . David . . ., individually and as Trustee of the Amended [Trust], and for good cause shown, the same is granted, as follows:

1. David is removed as Trustee of the [Amended] Trust, as interim relief pending a trial on the merits, per R.C. 5807.06(C).

2. Steven N. Skutch ("Skutch") is appointed Successor Trustee of the [Amended] Trust and to act as special fiduciary of the Trust under the terms and conditions of this Order pursuant to R.C. 5801.01.

3. David shall retain his position as President of . . . Jamra . . . unless Skutch deems David's removal necessary to facilitate the objectives of the [Amended] Trust. Skutch may only remove David as President of Jamra upon application to the Court. David shall provide Skutch with full access to the entirety of Jamra's facilities, and corporate records.

4. The [Amended] Trust shall be modified and supplemented by this Order and by any further orders that may be issued by this Court.

**1. Extent of Skutch's Authority**

1.1 Skutch shall not take title to the Trust and Jamra Property. Title to the Trust and Jamra Property shall remain in the name of the Trust and/or Jamra, unless otherwise ordered by the Court.

1.2 Without limiting or expanding the foregoing, Skutch is authorized to exercise all powers generally available and shall be subject to all the duties of a Successor Trustee under the laws of the State of Ohio that may be incidental to the management, operation, and sale of the Trust.

---

[3] Appellees filed a motion to dismiss David's appeal for lack of a final appealable order. On September 26, 2025, appellees' motion was denied.

1.3 Skutch shall have any additional powers that are provided by law and that the Court may from time to time direct or confer.

1.4 Skutch shall, during the pendency of this action, have the right to apply to this Court for instructions or directions.

1.5 The authority granted to Skutch is self-executing, unless the action requires Approval.

1.6 Skutch is authorized to act on behalf of the Trust and in the Trust's name as Skutch deems appropriate without further order of this Court and without personal recourse against Skutch (subject to the General Provisions).
. . .

3. **Skutch Compensation, Reports, Accounting, and Bond.**

. . .

3.3 By the 20th day after the end of each quarter Skutch shall prepare a Successor Trustee Report (including a detailed accounting report and other appropriate information relative to the administration of the Trust and (as required by law) pertaining to the operations of the Trust.[)].

3.4 Skutch's Reports shall be filed with the Clerk of the Court and served upon the parties . . .

**Law - Removal of Trustee/Modification of Trust**

R.C. 5807.06 provides:

(A) The settlor, a cotrustee, or a beneficiary may request the court to remove a trustee, or the court may remove a trustee on its own initiative.

(B) The court may remove a trustee for any of the following reasons:

(1) The trustee has committed a serious breach of trust;

(2) Lack of cooperation among cotrustees substantially impairs the administration of the trust;

7.

(3) Because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court best determines that removal of the trustee serves the interests of the beneficiaries.

(C) Pending a final decision on a request to remove a trustee, or in lieu of or in addition to removing a trustee, the court may order any appropriate relief under division (B) of section 5810.01 of the Revised Code that is necessary to protect the trust property or the interests of the beneficiaries.

R.C. 5810.01(B) states in relevant part:

To remedy a breach of trust that has occurred or may occur, the court may do any of the following:
. . .

(7) Remove the trustee as provided in section 5807.06 of the Revised Code;
. . .

(10) Order any other appropriate relief.

{¶ 18} "[T]he party seeking to remove a trustee must show a basis for removal by clear and convincing evidence." *Tomazic v. Rapoport*, 2012-Ohio-4402, ¶ 33 (8th Dist.), citing *Diemert v. Diemert*, 2003-Ohio-6496, ¶ 15-16 (8th Dist.). *See also In re Trust of Tary v. Seiple*, 2022-Ohio-3773, ¶ 21 (6th Dist.).

## Assignment of Error

{¶ 19} David argues the trial court erred when it granted appellees' motion to remove him as trustee of the Amended Trust because appellees failed to satisfy the clear and convincing evidentiary burden necessary for removal. He asserts the court made no findings on the record that appellees demonstrated any specific basis for removal under R.C. 5807.06(B), and the court granted the motion to remove solely "for good cause shown," which is not an evidentiary standard. David submits the court ignored well-established principles regarding a settlor's intent and the purported inherent conflicts of

8.

interest created by the settlors. Moreover, David maintains the court made no findings that his purported inherent conflict of interest prejudiced the beneficiaries.

{¶ 20} David contends the court exceeded its authority by removing him as an interim measure under R.C. 5807.06(C), as that statute does not authorize the removal of a trustee pending a final decision on a request to remove a trustee. In addition, David asserts that the Interim Order exceeds the court's scope of authority, as the statute does not authorize a court to amend the terms of a trust as interim relief or any other relief. He notes, for example, R.C. 5804.12(A) requires a trial court to "make the modification in accordance with the settlor's probable intentions," yet here, the court modified the Amended Trust but failed to consider or apply any modification standards. He also argues the Interim Order is contrary to the best interests of the beneficiaries.

{¶ 21} David argues that since 2009, he has worked diligently to ensure Jamra's orderly and continued operation by taking care of the beneficiaries in his role as trustee and providing jobs at Jamra and its related businesses to beneficiaries and their families.

{¶ 22} David asserts that as president of Jamra, he receives an annual salary and bonuses. He contends Jamra generates approximately $90 million in sales annually, and in 2024, he received a salary of $150,000 and a $300,000 bonus, which is reasonable. David argues, however, that appellees presented no evidence that his compensation from Jamra was unreasonable, and the court made no such finding.

{¶ 23} He further claims that the indirect accounting of his annual bonus is not a basis for removing him as trustee, despite the court's concern that the annual bonus was not paid directly by Jamra, but rather by Zigm, a related entity, as an expense. He notes
9.

the court characterized this accounting method as hiding his bonus, but David maintains the accounting method was not nefarious or improper, it is not a serious breach of trust, and it does not render him unfit to serve as trustee. He insists that to the extent the accounting method concerned the court, removal is far too drastic a remedy.

{¶ 24} David submits that in his role as trustee, he has been more transparent concerning the Amended Trust than any of his predecessors. He also claims that the Amended Trust gives the beneficiaries the right to inspect the trust's books and records, but none of the appellees requested to inspect the books and records prior to issuing a letter from counsel in late December 2023. David observes that he employed Michael and Susan to work at Jamra, and in their positions, they had regular access to Jamra's financial information, computers, and personnel.

{¶ 25} David observes that "[a trial] court's purpose in interpreting a trust is to effectuate, within the legal parameters established by a court or by statute, the settlor's intent," citing *Domo v. McCarthy*, 66 Ohio St.3d 312 (1993), paragraph one of the syllabus. He also notes that when a settlor has named the trustee, removal of the trustee voids the settlors' intent, so courts apply a more stringent standard to such removal requests. He cites to *Gorby v. Aberth*, 2017-Ohio-274, ¶ 31 (9th Dist.) ("[C]ourts less readily remove a trustee named by the settlor than one appointed by the court.").

**Standard of Review**

{¶ 26} David suggests that the issues presented in his appeal are subject to different standards of review. He contends that questions related to statutory interpretation and authority and whether the trial court applied the appropriate standards

10.

and law are subject to de novo review. He claims a de novo standard of review must be applied to the trial court's conclusions of law in order to decide whether the facts satisfy the applicable legal standard. He also claims that the decision to remove a trustee typically lies within the trial court's discretion, but if the issue concerns the application of law, it can be a mixed question of fact and law, which calls for two different standards of review.

{¶ 27} In support, David cites to several cases, including "*Wayt v. DHSC, LLC*, 155 Ohio St.[]3d 401, 404 (2018) ('The standard of review for questions of statutory interpretation is de novo.') [and] *State v. Vanpernis*, 2025-Ohio-365, ¶ 14 [(4th Dist.)] ('[W]hether a trial court has used the proper legal standard of review is a question of law, which we review de novo.')." He also relies on *Kidd v. Alfano*, 2016-Ohio-7519, ¶ 28 (2d Dist.) ("[W]hile the decision to remove a trustee typically lies . . . within the sound discretion of the trial court, 'when the issue concerns application of law, it can present a mixed question of law and fact, which calls for two different standards of review.'"), citing *Arnott v. Arnott*, 2012-Ohio-3208, ¶ 11.

{¶ 28} Trial courts "have a wide discretion in the appointment and removal of trustees." *In re Labold's Will*, 148 Ohio St. 332, 339 (1947). Thus, appellate courts review a trial court's decision to remove a trustee for an abuse of discretion. *Gorby*, at ¶ 31. An abuse of discretion connotes more than the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

11.

{¶ 29} Although David advocates for different standards of review to be applied to the issues on appeal, upon review, we find, based on his arguments and the relevant law, that the proper standard of review is abuse of discretion.

**Relevant Trial Court Pleadings**

{¶ 30} In their complaint against David, appellees alleged, inter alia:

22. David has operated Jamra as its President since approximately 2003.

23. David has not properly produced Jamra's books and records, pursuant to the terms of the Trust.

24. On December 27, 2023, [appellees], through their counsel, sent a letter to David, through his counsel, to formally request supporting information for Jamra's fiscal year 2022 and 2023 financial statements . . .
. . .

26. In response to the December 27 [l]etter, David provided only summary information that raised more questions than answers.

27. Upon information and belief, David is inappropriately using money from Jamra for the benefit of himself and his family and to the detriment of [appellees].

28. The records he provided in response to the December 27 [l]etter support this allegation.

29. David provided records that show many charges for "petty cash" and more than $75,000 of expenses for "travel, entertainment & meals," without any receipts or documentation to substantiate the expenses.

30. David's records show that Jamra pays for vehicles for his own personal benefit and that of his sons, Zachary and Max Oswald . . . , for no legitimate business purpose.

31. Zachary's auto reimbursement totaled $22,259.96 for 2022.

32. Zachary also received $63,470.41 in personal expenses for 2022, which has no legitimate business purpose.

12.

33. David received $29,877.89 in personal expenses, and Max received $6,395.55. Combined with Zachary, their personal expenses amount to 63% of Jamra's total personal expenses.

34. David also wrote off $588.72 of "bad debt" to Max and $826.32 of "bad debt" to Zachary.

35. David controls various other entities, such as D.W.T., Inc.; DFO Leasing, LLC ("DFO"); . . . [Zigm]; OZBA Land Company, LLC; Oswald & Bartolett, LLC; DDTS Central, Ltd.; and PDH Brokerage, Ltd. (collectively, "David Entities").

36. David uses the David Entities to inappropriately benefit himself at Jamra's and [appellees'] expense.

37. For example, in 2021, David paid [Zigm] $1,161,854.20 from Jamra. In 2022, David paid [Zigm] $1,256,693.41 from Jamra.

38. These large charges are masked as "consulting fees."
. . .

40. David improperly puts Jamra assets into the David Entities, so he can exercise indirect control over Jamra, without restriction by the Trust or his duties as Trustee.

41. DFO purchased the parking lot that Jamra employees use to park.

42. Upon information and belief, DFO now charges Jamra for use of the parking lot.

43. Susan works for Jamra as Vice President.

44. Since at least delivery of the December 27 [l]etter . . . David has retaliated against Susan by first limiting her computer access, then eliminating her computer access, then instructing her to train another employee on all her responsibilities, then mirroring her computer so David could watch "every move [Susan] makes," planting a hidden camera in Susan's office, and finally requiring Susan (as Vice President of Jamra) to punch a time clock.

45. David's actions are retaliatory and an attempt to make Susan quit Jamra.
. . .

13.

**Analysis of Arguments and Additional Law**

{¶ 31} We will address David's specific arguments in turn.

**Clear and Convincing Evidence Standard/Trial Court's Findings**

{¶ 32} David argues appellees did not satisfy the strict clear and convincing evidentiary burden necessary for his removal, and the trial court granted the motion to remove for good cause shown, which is not an evidentiary standard. David further contends that the court made no findings on the record that appellees demonstrated a specific basis for his removal under R.C. 5807.06(B), and the court made no findings that his purported inherent conflict of interest prejudiced the beneficiaries in any way.

{¶ 33} Appellees counter that the Interim Order was not deficient nor contrary to law, and David waived any complaint related to the Interim Order. They rely on Civ.R. 52, which states in relevant part that "[w]hen questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise . . . in which case, the court shall state in writing the findings of fact found separately from the conclusions of law." Appellees submit that Civ.R. 52 does not only apply to a final trial on the merits, but to any non-jury hearing where factual determinations are made. They cite to, inter alia, *In re Estate of Hoppes*, 2014-Ohio-5749 (12th Dist.) (Appellate court held trial court erred in failing to issue findings of fact and conclusions of law, pursuant to Civ.R. 52, with respect to the trial court's decision regarding a motion to remove the administrator of an estate, when a party requested such findings.). Appellees note that the purpose of Civ.R. 52 is to aid the court of appeals in reviewing the trial court's decision, and they refer to, inter alia,

14.

*Werden v. Crawford*, 70 Ohio St.2d 122, 124 (1982). Appellees contend that "'[i]f a party fails to request findings of fact and conclusions of law, the party waives the right to challenge the trial court's lack of explicit findings.' *K.C. v. T.D.*, 2024-Ohio-5636, ¶ 6 (6th Dist.), citing *Goddard v. Goddard*, 192 Ohio App.3d 718, 726 (4th Dist.)." They further assert that "'[w]hen a party fails to request findings of fact and conclusions of law, we ordinarily presume the regularity of the trial court proceedings. . . This means that we generally must presume that the trial court applied the law correctly and must affirm if some evidence in the record supports its judgment.' [*Goddard* at 726]."

{¶ 34} Appellees further assert that they did establish several bases for David's removal. They cite to R.C. 5807.06(B)(1), (2) and (3),[4] R.C. 5810.01(A) ("A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust") and *Zimmerman v. Dillon*, 2025-Ohio-3157, ¶ 23 (5th Dist.):

> R.C. Chapter 5808, et seq., lists the specific duties that a trustee owes to the trust's beneficiaries. . . . These duties include: (1) the duty to administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with the applicable Ohio statutes; (2) the duty of loyalty and to avoid conflicts of interest; (3) the duty to act impartially when a trust involves two or more beneficiaries; (4) the duty to "administer the trust as a prudent person would" and to "exercise reasonable care, skill, and caution;" (5) the "duty not to incur unreasonable costs;" (6) the duty to "take reasonable steps to take control of and protect the trust property;" (7) the "duty to keep adequate records" and to "keep trust property separate from the trustee's own property;" and (8) the "duty to keep the beneficiaries reasonably informed of the administration of the trust, and of the material facts necessary for them to protect their interests."

---

[4] "The court may remove a trustee for . . . commit[ting] a serious breach of trust; . . . [a] [l]ack of cooperation among cotrustees. . . ; [and] [b]ecause of unfitness, unwillingness, or persistent failure . . . the court determines that removal of the trustee best serves the interests of the beneficiaries."

15.

{¶ 35} Upon review, we find that since David did not request that the trial court provide findings of fact and conclusions of law following the issuance of the Interim Order, he waived the right to challenge the trial court's lack of explicit findings. As such, we presume the trial court applied the law properly if there is evidence in the record to support the court's decision.

{¶ 36} The record shows that the trial court expressly stated that appellees met their burden and also stated there was nothing in the record that appellees failed to prove that hiding the bonus in a wholly owned separate company did not violate David's trustee duties. Even though the trial court did not explicitly state what the burden was, the clear and convincing standard was plainly set forth in the record, including in David's opposition to the motion to remove him as trustee, and further, there is nothing in the record to indicate that the trial court did not apply the proper burden in reaching its determination to remove David as trustee.

{¶ 37} As to David's arguments that the trial court made no findings on the record that appellees demonstrated a specific basis for his removal or that his purported inherent conflict of interest prejudiced the beneficiaries, the record shows the trial court recognized that a successor trustee was needed to oversee David to "make sure that at least decisions between now and the trial don't involve self-dealing and . . . don't harm the beneficiaries of the trust." Hence, we presume the court applied the law properly as there is evidence in the record to support the court's finding that a successor trustee was necessary.

16.

{¶ 38} For the foregoing reasons, we find the trial court did not abuse its discretion, and the arguments raised by David are not well-taken.

**Compensation and Bonuses/Indirect Accounting**

{¶ 39} David argues that appellees presented no evidence that his compensation from Jamra was unreasonable, and the court made no such finding. He also argues the indirect accounting of his annual bonus was not a basis for removal and it does not render him unfit to serve as trustee, so removal was far too drastic a remedy.

{¶ 40} Appellees counter, regarding David's bonuses, that he never disclosed his bonuses to appellees because he paid them through Zigm. At the hearing, David testified that he categorized his bonuses as "consulting management" on Jamra's books, and he never informed appellees how he calculated his bonuses or how he reflected them in the financial statements that he did provide to appellees. David also testified that he did not think that appellees, as beneficiaries of the Amended Trust, deserved to know how much bonuses he was paying himself, "[a]s president[.]" Appellees maintain that the end result was that David, rather than paying out Jamra's profits to the beneficiaries, moved the profits over to Zigm, which he owns and where he pays out only to himself. Appellees claim that a trustee should not be scheming up how to force beneficiaries out of a trust, and it was this conflict of interest and self-dealing which carried the day for the trial court, as without oversight, the court feared David's wrongful conduct would continue with him acting as both trustee and president of Jamra.

17.

{¶ 41} Again, David did not request that the trial court provide findings of fact and conclusions of law, so he waived the right to challenge the trial court's lack of explicit findings as to his bonuses and compensation and accounting methods.

{¶ 42} Upon review of the record, the trial court did not specifically state that David's compensation from Jamra was unreasonable. Rather, the court stated "there's nothing here in the record that indicates that [appellees] have failed to prove that the hiding of the bonus in a wholly owned separate company did not violate the duties of being a trustee." The trial court implicitly determined that David's conduct of hiding his bonus constituted a violation of his duties as trustee. We therefore presume the trial court applied the law properly as there is evidence in the record to support the court's finding that David breached his duties with respect to his compensation and accounting practices, such that appellees proved David, by hiding his bonus in a separate company, violated his duties as trustee.

{¶ 43} For the foregoing reasons, we find the trial court did not abuse its discretion, and the arguments raised by David are not well-taken.

**Trial Court Exceeded Authority/Interim Order Exceeded Scope of Authority**

{¶ 44} David contends the court exceeded its authority by removing him as an interim measure under R.C. 5807.06(C), as that statute does not authorize the removal of a trustee pending a final decision on a request to remove a trustee. In addition, David maintains that the Interim Order exceeds the court's scope of authority, as the statute does not authorize a court to amend the terms of a trust as interim relief or any other relief. He notes, for example, R.C. 5804.12(A) requires a trial court to "make the modification in

18.

accordance with the settlor's probable intentions," but when the trial court modified the Amended Trust the court failed to consider or apply any modification standards.

{¶ 45} Appellees counter that R.C. 5807.06(C) authorizes David's removal as trustee pending a final decision on the merits.

{¶ 46} Again, David did not request that the trial court provide findings of fact and conclusions of law, so he waived the right to challenge the trial court's lack of explicit findings as to the modification of the Amended Trust.

{¶ 47} Upon review of the record, the trial court set forth that "David is removed as Trustee of the Trust, as interim relief pending a trial on the merits, per R.C. 5807.06(C)." As set forth above, R.C. 5807.06(C) states that "[p]ending a final decision on a request to remove a trustee . . . the court may order any appropriate relief under division (B) of section 5810.01 of the Revised Code that is necessary to protect the trust property or the interests of the beneficiaries." And, as previously set forth, R.C. 5810.01(B)(7) and (10) states in relevant part "[t]o remedy a breach of trust that has occurred or may occur, the court may . . . [r]emove the trustee as provided in section 5807.06 of the Revised Code . . . [or] [o]rder any other appropriate relief." In accordance with the applicable law, we find that the trial court did not exceed its authority by removing David as trustee as an interim measure and by issuing the Interim Order in which certain terms of the trust were amended as interim relief in order to remedy David's breach of trust.

{¶ 48} For the foregoing reasons, we find the trial court did not abuse its discretion, and the arguments raised by David are not well-taken.

19.

**Conclusion**

{¶ 49} Based on our findings above, we conclude David's assignment of error is not well-taken.  The May 12, 2025 judgment of the Lucas County Court of Common Pleas is affirmed.  David Oswald is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.


Thomas J. Osowik, P.J.           _____
                                                      JUDGE

Gene A. Zmuda, J.           _____

Myron C. Duhart, J.           _____
CONCUR.                                                JUDGE

                                            _____
                                                      JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.